IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY WANG,  Plaintiff,  v.  ASSET ACCEPTANCE LLC, and TRANS UNION, LLC,  Defendants. | No. C 09-04797 SI  **ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL DISMISSAL** |

Currently before the Court is Asset Acceptance, LLC's motion for partial dismissal of plaintiff's First Amended Complaint, specifically seeking dismissal of plaintiff's second cause of action for violation of the Fair Credit Reporting Act ("FCRA"). This matter came before the Court for hearing on July 16, 2010. Having considered the papers and arguments made, for the reasons set forth below, the Court DENIES defendant's motion for partial dismissal.

**BACKGROUND**

On August 20, 2009, Wang filed a class action complaint against Asset Acceptance, LLC ("Asset") in California Superior Court, County of Alameda, alleging that Asset reports debts to credit reporting agencies ("CRAs") without noting that the debts are either disputed or that the debts are no longer within their statute of limitations. *See* Notice of Removal, Docket No. 1, Ex. A ("Compl."). Asset removed the case to this Court on October 8, 2009. Plaintiff filed a motion to remand, which was denied on January 27, 2010. [Docket No. 32]. Asset filed a motion to dismiss the complaint, which the Court granted in part and denied in part on February 2, 2010. [Docket No. 33]. In ruling on the motion

to dismiss, the Court dismissed without leave to amend Wang's second cause of action under § 1785.25(a) of the California Consumer Credit Reporting Agencies Act ("CCRAA"), finding that § 1785.25(a) did not impose a duty on Asset to notify CRAs when consumers dispute debts. *Id.* at 8-9.

Wang's fourth cause of action alleged that Asset violated § 1785.25(a) of the CCRAA by failing to report to CRAs that debts were no longer within the applicable statute of limitations. The Court found that §1785.25(a) of the CCRAA, which prohibits Asset from furnishing incomplete or inaccurate information to CRAs, does not impose upon Asset a duty to report information related to any applicable statute of limitations. *Id.*, at 9-10. The Court, however, found that Wang did state a claim under § 1785.25(a) for Asset's alleged continued reporting of Wang's debt after Asset had dismissed a state court action against Wang seeking that same debt. *Id.* at 11. Finally, the Court dismissed Wang's third and fifth causes of action under California's Unfair Business Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) without leave to amend, holding that those causes of action were preempted by the FCRA.[1]

Plaintiff filed his first amended class action complaint ("FAC") on April 29, 2010 [Docket No. 49], stating four causes of action: (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e ("FDCPA") against Asset; (2) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) ("FCRA") against Asset; (3) violation of the CCRAA, Cal. Civ. Code § 1785.25(a) against Asset; and (4) violation of the FCRA, 15 U.S.C. § 1681c(f), against Trans Union, LLC.[2] Relevant to this motion, plaintiff alleges that Asset repeatedly placed a tradeline on plaintiff Wang's credit report falsely stating that Wang owed a telephone bill ("False Debt"). FAC ¶¶ 15, 18-23. Wang alleges that despite disputing the tradeline and debt in February and November 2008, Asset continued to report the False Debt without noting that it was disputed, including a report by Asset in June 2009. FAC ¶¶ 22-23.

Defendant Trans Union answered the FAC on May 28, 2010. [Docket No. 56]. Asset now moves

---

[1] The Court denied Asset's motion to dismiss Wang's first cause of action, seeking a declaratory judgment that Wang was not liable for his purported debt. *Id.* at 5-6. That cause of action has not been realleged in the amended complaint.

[2] The First Amended Complaint, with its expansion of the parties and claims, was filed by stipulation. [Docket No. 47].

2

to dismiss plaintiff's second cause of action under the FCRA.[3]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citations omitted).

## DISCUSSION

The FCRA imposes obligations on three types of entities: CRAs, users of consumer reports, and furnishers of information to CRAs. 15 U.S.C. § 1681, *et seq*. The FCRA does not define the term

---

[3] Asset also challenged plaintiff's third cause of action under the CCRAA, arguing the claim was preempted by the FCRA. After the motion was filed, the parties stipulated to the dismissal of this claim, which the Court ordered on July 7, 2010. [Docket No. 69].

1 "furnisher," but courts have defined the term as an entity which transmits information concerning a
2 particular debt owed by a particular consumer to CRAs. *See, e.g., Jarrett v. Bank of America*, 421 F.
3 Supp. 2d 1350, 1352 n.1 (D. Kan. 2006). In this case, Asset, which allegedly bought the rights to collect
4 Wang's False Debt (FAC ¶¶ 1, 2, 15), is a "furnisher" of information under the FCRA.

Section 1681s-2 sets forth responsibilities of furnishers of information to consumer reporting agencies, delineating two categories of responsibilities. Subsection (a) details the duty "to provide accurate information," and requiring "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." § 1681s-2(a)(3). The duties imposed under § 1681s-2(a), however, are only enforceable by governmental bodies. *See Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002).

Subsection (b) "imposes a second category of duties on furnishers of information. These obligations are triggered 'upon notice of dispute' – that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). Specifically, subsection (b) provides:

> (b) Duties of furnishers of information upon notice of dispute
> (1) In general
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>     (A) conduct an investigation with respect to the disputed information;
>     (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>     (c) report the results of the investigation to the consumer reporting agency;
>     (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>     (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>         (I) modify that item of information;
>         (ii) delete that item of information; or
>         (iii) permanently block the reporting of that item of information.
> (2) Deadline
> A person shall complete all investigations, reviews, and reports required under paragraph (1)

regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

Both parties agree that the requirements of § 1681s-2(b) are triggered by the CRA's duties under § 1681i. For example, § 1681i(a) requires CRAs to promptly start a "reinvestigation" when a consumer disputes information about a debt that shows up on his or her credit report. As part of that reinvestigation, where the CRA determines a dispute is not frivolous, § 1681i(a)(2) requires a CRA like Trans Union to promptly to notify a furnisher like Asset that a consumer has disputed the particular information provided by the furnisher to the CRA. It is this notice that triggers the duties of furnishers like Asset to investigate under § 1681s-2(b).

Section 1681s-2(b)(2) provides that a furnisher must complete its investigation or review and report back to the CRA its position about the disputed information within the 30-day deadline provided for the CRA's "reinvestigation" under § 1681i(a)(1).[4] The furnisher could, for example, report back to the CRA that the information provided was accurate and need not be modified, deleted or blocked. *See, e..g, Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1152 (9th Cir. 2009) (furnisher reported back to CRA that the credit information was accurate). Or the furnisher could report back that the information provided must be modified in the consumer's credit report to show that a particular debt has been disputed by a consumer. *Id.* at 1164.

The parties also note that under § 1681i(a)(5)(A), once a CRA finishes its reinvestigation – after a furnisher reports back its findings on the disputed information – if the disputed information is inaccurate or unverifiable the CRA is required to "(I) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer."

Asset make two attacks against plaintiff's second cause of action under the FCRA. First, Asset

---

[4] As the Ninth Circuit explained, the use of the term "reinvestigation" with respect to a CRA's duties under the FCRA recognizes that the entity in the best position to initially investigate the circumstances surrounding a disputed debt is the furnisher. *Gorman*, 584 F.3d at 1156-57.

1 argues that plaintiff fails to state a claim under 15 U.S.C. § 1681s-2(b) with respect to plaintiff's
2 February and November 2008 disputes because plaintiff has not alleged that Asset received notice of
3 those disputes under 15 U.S.C. § 1681i(a)(2). Second, with respect to the June 2009 tradeline, Asset
4 argues that plaintiff cannot allege a violation of the FCRA because plaintiff did not dispute the tradeline
5 with Trans Union or any other CRA and, therefore, Asset's duties under § 1681s-2(b)(1) were not
6 triggered.

**1.    The February and November 2008 Disputes**

Asset first argues that Wang has failed to allege sufficient facts that Trans Union notified Asset of Wang's February and November 2008 disputes, which is a necessary predicate for Asset to be liable under § 1681s-2(b) of the FCRA. Wang's response is three-fold. First, he argues that such notification was adequately pled in the FAC. *See* FAC ¶ 53 ("Asset and the other Defendants received notice of these disputes under 15 U.S.C. § 1681i(a)(2)."). Second, he argues that additional facts regarding notice with respect to Wang's disputes are unnecessary because § 1681i(a)(2) required Trans Union to provide notification of his disputes to Asset. As such, a reasonable inference under *Iqbal* (129 S.Ct. at 1949), can be made that Asset received notice from Trans Union under § 1681i(a)(2). Third, Wang attaches to his Opposition brief unauthenticated copies of Asset's responses to requests for admissions, that plaintiff believes prove that Asset received notice of the February and November 2008 disputes. Oppo. at 3-4.

The Court agrees with defendant that reliance on unauthenticated responses to requests for admission is not generally appropriate in ruling on a motion to dismiss.[5] The Court also finds that a "reasonable inference" cannot be drawn from the fact that § 1681i(a)(2) required Trans Union to report Wang's disputes to Asset. Simply because the statute requires CRAs to take action, does not mean CRAs do so. The Court, however, does not believe that any additional facts are necessary to state a

---

[5] Despite Asset's objections to plaintiff's attempt to rely on admissions, defendant repeatedly argues that there is no need to grant plaintiff leave to amend his FCRA claim because plaintiff "knows" Asset properly handled these two disputes based on discovery provided by Asset. *See* Reply at 6:4-6; *see also* Defendant's Response to Motion to Strike at 3:3-7. Such arguments, if supported by authenticated evidence, can be made in a motion for summary judgment, but not in a motion to dismiss.

6

claim with respect to notice under § 1681i(a)(2). In his FAC, Wang explains how he discovered Asset initially reported the False Debt to Trans Union, how Wang disputed that information with Trans Union, and how the information about the False Debt was re-reported by Asset without disclosing that Wang disputed it. *See* FAC ¶¶ 18-22. Wang also alleges that Asset received notice of his dispute about the False Debt, but failed to note the same when initially reporting and then re-reporting the information about the False Debt to Trans Union. FAC ¶ 53.

Asset argues that Wang needs to allege additional facts about notice, including when Trans Union notified Asset of the dispute (Motion. at 9:10-12), but does not explain how Wang or similarly situated consumers would have access to those "facts" without formal discovery.[6] The Court finds that Wang has adequately alleged that Asset received notice of the disputes from Trans Union.

Asset also argues that Wang fails to state a claim because he does not allege that Asset failed to conduct a reasonable investigation into any dispute transmitted by Trans Union or that Asset failed to notify Trans Union the account was "disputed," both of which are essential elements of a § 1681s-2(b) claim. As an initial matter, as Wang points out, the duties imposed upon furnishers like Asset under § 1681s-2(b) are independent and severable. Wang need not assert, for example, a failure to conduct a reasonable investigation as a predicate for alleging a violation of § 1681s-2(b). *See Gorman,* 584 F.3d 1147 at 1155-64 (separately reviewing plaintiff's allegations that a furnisher violated its duty to conduct a reasonable investigation and its duty to accurately report a debt as disputed). Wang, therefore, need not allege that Asset failed to investigate, or otherwise failed to comply with all of the duties imposed by § 1681s-2(b), in order to allege that Asset failed to properly report Wang's disputed debt.

Moreover, the Court notes that plaintiff *does* allege that after receiving notice from the CRA,

---

[6] The cases cited by Asset, holding that summary judgment is proper where plaintiffs fail to produce evidence showing that furnishers received notice of disputes from CRAs, are inapposite. *See, e.g., Chiang v. MBNA*, 634 F. Supp. 2d 164, 174 (D. Mass. 2009) (summary judgment granted to defendant where plaintiff failed to produce evidence showing that defendant received notice of the dispute from a CRA); *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1231 1230 (C.D. Cal. 2007) (same).

7

1 Asset was "obligated" to investigate, and that investigation should have concluded that the debt was
2 disputed, and that the report Asset was furnishing was inaccurate, incomplete or could not be verified.
3 FAC ¶ 53. Plaintiff also alleges that Asset continued to report the disputed information to the CRAs
4 without noting that Wang had disputed the debt. *Id.*, ¶ 54.

5 In sum, the Court does not resolve the parties' disputes about what the discovery taken to date
6 shows about the merits of Wang's FCRA claim with respect to the February and November 2008
7 disputes. Instead, the Court finds that Wang has adequately alleged a § 1681s-2(b) claim with respect
8 to the February and November 2008 disputes.

10 **2.     The June 2009 Tradeline**

11 Asset also argues that Wang has failed to state a FCRA claim against Asset with respect to the
12 June 2009 tradeline – which showed the False Debt but did not indicate that the debt was disputed –
13 because Wang does not allege that he notified Trans Union or any other CRA of his dispute over the
14 June 2009 tradeline, much less that Asset received notice from a CRA of the "new" dispute. Wang does
15 not argue that he could amend to allege that he disputed the June 2009 tradeline with a CRA. Instead,
16 he argues that there was no need to report a dispute with respect to the June 2009 tradeline because §
17 1681s-2(b)(1)(E) imposes a "continuing duty" on furnishers like Asset to filter previously disputed
18 information. Oppo. at 6-9; 15 U.S.C. § 1681s-2(b)(1)(E) ("if an item of information disputed by a
19 consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under
20 paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on
21 the results of the reinvestigation promptly – (I) modify that item of information; (ii) delete that item of
22 information; or (iii) permanently block the reporting of that item of information.").

23 Asset argues that the plain language of the section demonstrates that the duties of § 1681s-
24 2(b)(1)(E) are triggered only "upon notice of dispute," meaning that a consumer must report a dispute
25 each time an allegedly incomplete or inaccurate tradeline is submitted by a furnisher like Asset to Trans
26 Union or another CRA. In support of its argument that no "continuing duty" exists after the furnisher
27 conducts an investigation and provides the information required to the CRAs under (b)(1), defendant
28 notes that a deadline is given to furnishers that requires them to complete all "investigations, reviews,

8

and reports" to CRAs within the 30-day period provided by § 1681i(a)(1). *See* § 1681s-2(b)(2). That 30-day deadline, Asset contends, supports its argument that no "continuing duty" with respect to future furnishing of information on the same debt is imposed by § 1681s-2(b). Asset also argues that the only "continuing duties" imposed by the FCRA on furnishers are those contained in § 1681s-2(a), which can be enforced only by governmental bodies. *See, e.g.*, *Nelson,* 282 F.3d at 1059-60.

Wang responds by arguing that the purpose of the FCRA is to "protect consumers against inaccurate and incomplete credit reporting." *Nelson,* 282 F.3d at 1060. He also notes that the FCRA's "consumer oriented objectives support a liberal construction of the FCRA." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Wang argues that the consumer-oriented purpose of the FCRA would be undermined if the Court agreed with defendant that furnishers like Asset are free to re-report disputed debts to CRAs without noting they are disputed after the conclusion of the initial investigation. Wang alleges that Asset specifically engages in this conduct – repeatedly furnishing inaccurate information to CRAs after the conclusion of prior investigations under § 1681i – in an effort to force consumers to pay disputed debts in order to avoid further damage to their credit reports.

Wang also relies on the specific text of § 1681s-2(b)(1)(E), which was added to § 1681s-2(b)(1) in 2003. Wang notes that (b)(1)(E) requires furnishers, after the completion of the "reinvestigation" – as noted above, a term used in the statute to describe CRAs' duties under § 1681i – to "promptly" modify, delete or permanently block the reporting of the item of information. Plaintiff contends that the use of the term "promptly" under (b)(1)(E) shows that the 30-day "deadline" for reports imposed by § (b)(2) does not terminate furnishers' duties with respect to (b)(1)(E), since if the 30-day deadline in (b)(2) set the time frame for the furnishers' duties under (b)(1)(E) there would be no need to require furnishers to act "promptly." Wang further argues that the use of the term "reinvestigation" supports his argument that § 1681s-2(b)(1)(E) requires furnishers to "conform the disputed information to the reinvestigation's result if it subsequently re-furnishes that information" back to a CRA. *See* Sur-Reply at 4:16-19; *see also Gorman*, 584 F.3d at 1156-1157 (CRA's responsibility is to "reinvestigate a matter once already investigated in the first place" by the furnisher). Wang contends that his position that the furnisher's subsequent treatment of previously disputed information must "conform" to the results of the CRA's reinvestigation is supported by the requirement, under § 1681i(a)(5)(A), that a CRA must

9

1 "promptly" delete or modify any information that it concludes is inaccurate or unverifiable from the file
2 of the consumer and "promptly" notify the furnisher that the inaccurate or unverifiable information has
3 been modified or deleted from the consumer's file.

4     The plain text of the statute does not answer the question at hand. However, in light of the
5 purpose of the FCRA and the interplay between § 1681s-2(b)(1)(E)'s requirements for furnishers and
6 § 1681i(a)(5)(A)'s requirements for CRAs, plaintiff's position is more persuasive. While the duties
7 imposed by § 1681s-2(b) are not triggered until notice is provided pursuant to § 1681i, there is no
8 indication that Congress intended a consumer – who had provided notice of the dispute with respect to
9 inaccurate information in his credit report, and the reinvestigation and investigation required by §§
10 1681i and 1681s-2(b) had been conducted and plaintiff's credit report modified as a result – to
11 continually *redispute* the inaccurate or incomplete reporting of the same debt in order to ensure an
12 accurate credit report.

13     The Court is cognizant of the fact that the FCRA "has been drawn with extreme care, reflecting
14 the tug of the competing interests of consumers, CRAs, furnishers of credit information, and users of
15 credit information." *Nelson*, 282 F.3d at 1060. As part of that balance, as the Ninth Circuit explained
16 in *Nelson*, Congress limited a consumer's private right of action against a furnisher to instances where
17 the consumer provides notice of the dispute to CRAs, in order prevent furnishers of credit information
18 from being "exposed to suit by any and every consumer dissatisfied with the credit information
19 furnished." *Nelson*, 282 F.3d at 160. This "filter" provides furnishers a way to limit their liability, by
20 complying with the requirements of § 1681s-2(a) once they are notified of a non-frivolous dispute by
21 a CRA. *Id*. In cases like this one, where a consumer has followed the procedures required by the FCRA
22 and submitted a dispute to a CRA – and a CRA has amended plaintiff's credit report as a result of the
23 investigation by the furnisher and reinvestigation by the CRA – the furnisher has the ability to protect
24 itself from further liability by modifying, deleting, or permanently blocking the information that it
25 reports on the same debt to CRAs in the future. This reading of the statute comports with the language

10

used by Congress in adding §s 1681s-2(b)(1)(E) and 1681i(a)(5)(A) to the FCRA in 2003.[7]

Finding that the duties required under § 1681s-2(b)(1)(E) continue after the furnisher initially complies with its duty under (b)(1)(A) - (D), however, is not a finding that Asset violated § 1681s-2(b)(1)(E). The statute requires furnishers to modify, delete or permanently block information in its reports to CRAs only "as appropriate." The question of whether Asset acted appropriately in this case – which could turn upon the nature of Wang's dispute of the debt and Asset's knowledge of that dispute, among other factors – is a question of fact to be resolved at a later date.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to dismiss plaintiff's second cause of action under the FCRA.

**IT IS SO ORDERED.**

Dated: July 27, 2010

SUSAN ILLSTON
United States District Judge

---

[7] During oral argument Asset agreed with plaintiff's position that § 1681i(a)(5)(A) and § 1681s-2b(1)(E), which were both added to the FCRA in 2003, can be read as working together. Asset contends, however, that in order to state a claim for violation of 1681s-2(b)(1)(E), plaintiff must specifically allege that Trans Union provided Asset notice pursuant to 1681i(a)(5)(A) that Wang's credit report had been modified to show the dispute on the False Debt. Asset's counsel contended that Wang could not, in good faith, make that allegation. However, as noted above, plaintiff has alleged that Asset received notice from Trans Union about the dispute under 1681(a), but nonetheless continued to report the information about the False Debt, without noting it was disputed, back to Trans Union. That is sufficient to survive a motion to dismiss.